## HOFFSTETTER *vs.* BLATTNER.

1. Where a person in possession of premises sells the same and removes from the house, and delivers the keys of the house to his vendee, with the intention of giving him possession, such acts will amount to a delivery of possession, and will enable the vendee to maintain an action of forcible entry and detainer against an intruder.

2. One tenant in common of land may cast his co-tenant and hold adversely to him.

ERROR to the Court of Common Pleas of St. Louis county.

GAMBLE, *for Plaintiff in Error.*

The plaintiff in error makes the following points:—

*Hoffstetter* vs. *Blattner*.

1. That the court erred in admitting the testimony of Moser, who testified that he possessed the property under a written 'lease from Blattner, when the lease was not produced, nor its absence accounted for. He testified also that he had sold to Blattner, and no conveyance was shown.

2. That the plaintiff was not entitled to recover on the case made, and the court ought to have given the instruction asked.

3. That the court erred in refusing to admit the evidence offered by defendant, Hoffstetter. Strasser was Hoffstetter's lessor, and if he and Blattner were tenants in common, the possession of neither is adverse to the other, without proof of actual ouster.

4. That the court erred in giving the instructions which were given.

5. That the court erred in refusing the new trial moved for by Hoffstetter.

6. That the judgment is beyond the penalty of the appeal bond.

PRIMM, TAYLOR, *and* GEYER, *for Defendant.*

In support of the judgment, the defendant in error submits the following:—

This Court will not look into the record, and reverse the judgment of the lower court, because—

1. The plaintiff in error did not except to the judgment of said court, in overruling his said motion for a new trial, for by quietly looking on without excepting, he admitted the correctness of all that preceded said verdict, as well as the judgment overruling that motion. —Swearingen *vs.* Newman's Administrator, 4 Mo. Rep., 456.

2. An appellate court will only consider such matters and decision as appear on the record to have been excepted to by the party complaining; hence this Court will confine its investigations to the overruling of the motion of the plaintiff in error to *non-suit* the defendant in error, because the same is the only judgment of the court below excepted to.

3. This Court will not undertake to say the court below erred in overruling the motion for a new trial, because it does not appear, from the bill of exceptions in this cause, that all the evidence introduced before the jury is preserved in the same.—4 Mo. Rep., 18; 5 *Ibid.*, 110; 7 *Ibid.*, 4.

4. There was no error in the court below, in admitting the deposition of Samuel Moser, because, from the nature of this proceeding, possession was all that the law of the land required the complainant to show; and all else coming from him, as contained in said deposition, will be rejected as surplusage, and this Court will not grant a new trial because improper evidence was admitted, unless there be probable ground to believe that injustice has been done by the admission of such testimony.—12 Wend., 41; 4 Mo. Rep., 18.

5. The court did not err in rejecting the evidence on the part of the plaintiff in error, in order to show that he was a tenant in common with the defendant in error, for that would be going into the evidence of title, which in this action is strictly forbidden. (Revised Code, title, "Forcible Entry and Detainer," sec. 25, p. 280; 6 Mo. Rep., 346; 7 *Ibid.*, 158; 4 Bibb, 192; 3 Marshall, 344.) No title

of any kind is in question in this proceeding.—1 Pirtle's Dig., 44, and authorities there cited.

6. The court did not err in its instructions to the jury, nor in overruling the motion for a new trial.

7. The verdict of the jury is in accordance with the law of the land, and the court did not err in entering up judgment for double the amount of the damages assessed by the jury.—See session acts of 6 Mo. Rep., 346.

8. It is not known by what authority Augustine comes at this late day, and complains that judgment has been entered up against him for an amount over and above the penalty of his bond, when neither himself nor any one for him, moved the court below to correct the same.

9. And even if there was error in the court below in entering up judgment against Augustine, yet this Court will not reverse the same for that reason, but will enter a *remittitur* for the amount over and above the penalty of his bond.— Rev. Code, 468, 469; 4 Mo. Rep., 423.

TOMPKINS, *Judge, delivered the opinion of the Court.*

This was an action of forcible entry and detainer, commenced on the 9th day of November, in the year 1841, by Jacob Blattner, the appellee, against the said Gabriel Hoffstetter and John Strasser, before a justice of the peace: Strasser was acquitted before the justice, and Hoffstetter found guilty. Hoffstetter appealed to the Court of Common Pleas, where judgment was rendered against him, and security was given in his appeal bond for two hundred and fifty-six dollars for damages, besides rent at thirty-two dollars per month.

On the trial of the cause, Blattner, the defendant in error, produced as a witness one Moser, who stated, that he had rented, since the month of March preceding, the house about which this suit was commenced, from Blattner: it is the same of which Hoffstetter and Strasser then had possession; that he left the house on the first Thursday in November; he left some things in the house; he locked the house, and gave the keys to Blattner; when he left the house he nailed the windows down, and made every thing secure about the house; he went back on Friday for some of the things he had left; on Saturday he went after the remainder of the things, and then it was he first saw two men in the house, and one of them was Gabriel Hoffstetter; he asked them how they got in, and they said that Strasser opened the house in the night, and in the morning they were put into possession; he saw one of the windows broken; that Blattner owned the house, and he rented it from him.

On his cross-examination he stated, that he rented the house from Blattner; that he had a lease in writing at twenty-five dollars per month; that Blattner owned the house, and he sold it to Blattner; that he did not recollect at what time he sold it to him. Being asked whether he sold Blattner the whole house or his interest in it, and the question being objected to, he answered, "I sold Blattner the property; I built the house, and paid for it; Mr. Strasser worked upon the house; Mr. Strasser was a partner of mine in building this house; I never paid

any thing for the work he did on the house; I did not sell the house to Blattner to cheat Mr. Strasser; Strasser never lived in the house as the tenant; Strasser boarded with me in Second-street, and did not pay me; Strasser never slept in the house on Fourth-street, that I know of; I never did threaten to shoot Mr. Strasser; when I moved into the house, Mr. Strasser was not there; sometimes he was in the house, sometimes with his wife while the house was building." The remaining part of the testimony is very little more than a repetition of what he had before stated. He, however, stated further —"the one pane of glass up stairs was not broken when he left the house; that he did not rent the house of Blattner when he first occupied it, because he owned it; that he lived there all the time till November." The testimony of Moser was objected to, because the instruments of writing therein mentioned were not produced, and because said testimony contained evidence of title.

Stoffield, a witness on the part of the plaintiff, Blattner, testified also, that Moser left the house on the third or fourth day of November. He left some lumber in the house, and the plaintiff gave the keys to the witness, who removed the lumber and went through the house, locked all the doors, and nailed down the windows. This was done on the 5th day of November, and on the next day the witness went down with the plaintiff to the house, and found the two families in it. There was an old iron key in the house, newly filed, and one pane of glass was broken. Moser had been living in the house ever since it was built. He did not see Hoffstetter in the house. He saw no person there but some women. He knew that Jacob Blattner, the plaintiff, never lived in the house or on the premises in question. McGlosky, a witness of Blattner, the plaintiff below, defendant in error, stated that he had leased the premises in question on the 1st of November, for one year, from Blattner: the lease was then set out. The witness said he did not arrive in St. Louis till the ninth, and finding the house occupied, he and Blattner annulled the lease.

The plaintiff here closed his evidence. The defendant then moved the court to instruct the jury that the plaintiff could not recover on the evidence given:

1. Because at the time of the alleged forcible entry, viz., on the 6th November, McGlosky had a lease of the whole premises, and Blattner had no right of possession.

2. Blattner never had any actual possession of the house or premises, by occupancy or otherwise, before the commencement of this suit.

3. Because it appeared, from the evidence, that Moser and said Strasser were partners in the house, and consequently both entitled to possession.

4. Because there was no evidence of any violence committed by the defendant in his entry upon the premises.

5. Because the house was vacant at the time of said entry.

6. Because there was no evidence that any demand of possession was made of the defendant before the commencement of the suit, by any person authorized to take possession.

7. Because there was no evidence of right of possession in Blattner.

*Hoffstetter* vs. *Blattner.*

The defendant's motion was overruled, and exceptions taken to the decision of the court on the motion.

The defendant, plaintiff in error, then proved, that when he moved into the house it was empty; it was done in the morning, at no unusual time of the day, or, as one of the witnesses expressed it, he saw nothing about the proceedings of Hoffstetter, in going into the house, to excite his surprise; that he knew nothing of the difficulties between the parties. Strasser was in company, and had a key with which the door was unlocked. A lease from Strasser to Hoffstetter was also proved.

Hoffstetter also offered to prove, that on the 20th of June, 1840, he was tenant in common of said premises with said Moser, under a lease for fifty years, from the city of St. Louis, and that he, Strasser, had built the house thereon. Strasser, it appeared from the lease above given in evidence, had leased one-half of the premises to Hoffstetter.

The Court of Common Pleas excluded this evidence.

Another witness of the defendant proved that Strasser occupied the house a short time after it was built, and before Moser took possession. This witness stated, that Moser came to the house, and told Strasser to let him occupy the whole house as a boarding-house. Strasser refused, and Moser threatened to shoot him if he did not go away and give up the whole house. Moser drove off Strasser from the house. The house was finished in the Fall of 1840. This witness was present at the time Hoffstetter went into the house on 6th November, 1841. No other evidence deserving notice was given.

The court instructed the jury as follows:—

1st: If they believed that the plaintiff was in possession of the house mentioned in the complaint, on the 4th day of November, 1841, and that the defendant entered and took possession of the same clandestinely, by means of a false key, although no force was in fact used, or by breaking the window, this amounts to a forcible entry in contemplation of law.

2d: To establish the plaintiff's possession, it is not necessary that he or his family should have been in the actual occupancy of the house; a man may have the possession of a house otherwise than by living in it; he may have part of his goods there, or he may be put into the possession by the party who lives in it going out, and formally taking him to the house, and in the presence of witnesses delivering him the key, or saying that he gave up the possession to him.

Judgment being given for Blattner against Hoffstetter, Hoffstetter moved for a new trial, for many of the common reasons arising out of the conduct of the jury in finding the verdict, and of the court in construing the law arising in the facts of the case.

The points material to the decision of this case are —

1st: Had Blattner, the defendant in error, a possession such as to authorize him to maintain an action of forcible entry and detainer?

2d: Ought the testimony of Moser to have been excluded?

3d: Ought the Court of Common Pleas to have admitted the evidence that

Moser and Strasser were joint tenants, or tenants in common of the contested property, by purchase from the city of St. Louis ?

The two first points will be considered together.

It never was contemplated by the legislature that the rights of the parties to the disputed property should be tried in this form of action. The 25th section of the act concerning forcible entry and detainer, page 280 of the Digest of 1835, provides, not only that the merits of the title shall in nowise be inquired into in any complaint exhibited by virtue of this act, but that it shall not extend to any person who has been in the uninterrupted occupation of the premises, even for three years next preceding the complaint exhibited. He stated, that he rented the house from Blattner from March to November, when he quit. He then locked the doors and quit, and gave the keys to Blattner. Stoffield, a witness for the plaintiff, Blattner, said, that when Moser quit the house, he left some *lumber* and *truck* in it, and gave it to him, the witness; he went to the place, and got the lumber. The plaintiff gave the witness the keys of the house. He stated also, that "a woman, who had worked for Moser, had something in the house, and Blattner, the plaintiff, gave her also the key, and the woman took her things away, and gave back the key to the plaintiff." Whether the delivery of the keys of a house, it being locked, would be a delivery of the house, would depend on the intention with which the keys were delivered; that intention cannot be doubted here, nor can it be doubted with what intention Blattner accepted them. He takes them, and exercises the rights of ownership over the house, giving permission, first to Stoffield, the witness, to take the key and carry out the property which Moser had left there for him; next he gives the key to the woman, with permission to carry off her property.

But it is contended that Moser's testimony is inadmissible, because he spoke of the sale of the land or lot on which the house stands, and a lease, and neither the deed nor lease were produced. It does not appear in evidence that there was a deed; and if Blattner chose to risk the honesty of Moser, he had a right to do so. But it was not the object of Blattner, in this case, to show in himself a title in fee simple to this property, nor was it his object to establish a lease from himself to Moser. All he had any occasion to prove was, that he had the right of possession, and nothing was said by him about either the lease or the sale of the land, till it was drawn out on the cross-examination. I see no reasonable, or even plausible, objection to the admission of Moser's testimony.

To sustain himself in the second point, the plaintiff in error relies on Blount and Baker *vs.* Winright, (7 Mo. Rep., 51,) and Brewer *vs.* Peed, (6 Marshall's Rep., 494.) The first case is, where the defendant in the action of forcible entry and detainer had conveyed the land to certain persons in trust, and these persons had sold the land to raise money for the purpose of the trust. Winright, who had never parted with the possession of the land, refused to deliver possession to the purchasers from the trustee, and the purchasers brought the action of forcible entry and detainer against him, and failed, of course. Had Moser, after the sale to Blattner, failed to deliver possession, and Blattner brought the action against him

36

to get possession, then the case of Blount and Baker *vs.* Winright would have been in point to show that Blattner could not recover. Winright had never delivered possession of the land sold by his agents; but Moser had, and Blattner, the vendee of Moser, sues Hoffstetter, a stranger. The case of Brewer *vs.* Peed, from J. J. Marshall, is still more plainly against the plaintiff in error.

This is a summary of the case: "A. sells and conveys land, on which he lives, to B., and without putting B. into possession, or removing from the land himself, he takes a lease for it from B." In such a case, A., though holding over after his lease had expired, cannot be removed by a writ of forcible detainer. Here is the strongest possible case: the vendee had never been in possession; the vendor had taken a lease from him, and it was decided that the vendee could not recover. In both those cases the affair was betwixt vendor and vendee. Here it is betwixt the vendee, to whom the vendor had yielded possession, and an intruder, known neither to the one nor the other of the parties to the sale. Blattner, then, I conclude, was in a situation to authorize him to sue any intruder.

3. It is contended that the evidence offered by Hoffstetter, to show that Moser and Strasser were tenants in common, ought to have been admitted, as that proof might have shown that the possession of Moser was the possession of Strasser, and therefore he might lawfully enter on his share of the premises, and reference is made to 5 Cowen, 484, and to 5 Wheaton, 124. In the first of these cases, Jackson, on the demise of Krom *vs.* Brink, the court say it is undoubtedly true, that the possession of one tenant in common, in general, enures to the benefit of all; but it is equally true, that one tenant in common may oust his co-tenant, and hold adversely to him. In that case is cited the page of Wheaton above referred to by the counsel of Hoffstetter, and the words which are transferred from Cowen, as above, are quoted from Wheaton, above-cited, McClung *vs.* Ross. The testimony of Moser showed very plainly, that he had ousted Strasser for more than a year, and if the evidence given by Blattner had not proved that Moser had ousted Strasser, the plaintiff in error has himself provided that there should be no defect of evidence on that head. One of his witnesses say, "he was present in the Fall of 1840, when Moser demanded the whole house of Strasser, and on Strasser's refusal, Moser threatened to shoot him, if he did not go away and give up the whole house;" and that Moser drove Strasser from the house. The possession was held by Moser alone, not for Strasser's benefit, and that possession was delivered over by Moser to Blattner.

The court, then, committed no error in excluding the written evidence of purchase offered by the plaintiff, Hoffstetter, to prove that Moser and Strasser were joint purchasers of the premises from the city of St. Louis.

It was also contended, that the lease made by Blattner to McGlosky gave to him all of Blattner's right of possession, and consequently Blattner could not maintain an action of forcible entry and detainer against any trespasser. This lease never took effect betwixt Blattner and McGlosky, as the latter never took possession; and further, it was cancelled on the day Blattner sued Hoffstetter and Strasser.

These are all the matters arising in the case argued by Mr. Gamble. Other objections appear to have been made by counsel below, which, I think, were properly abandoned.

But the judgment of the Court of Common Pleas must be reversed, because it is for more than the amount of the appeal bond.

The cause is remanded.